[926 NYS2d 546]

Susanne Giglio et al., Respondents, v NTIMP, Inc., Doing Business as Napper Tandy's Pub, Defendant and Third-Party Plaintiff-Respondent-Appellant, et al., Defendant. Dawn McNeil, Third-Party Defendant-Appellant.

Second Department, June 14, 2011

302

**APPEARANCES OF COUNSEL**

*David J. Sobel, P.C.*, Smithtown, for third-party defendant-appellant.

*White Fleischner & Fino, LLP*, New York City (*Jared H. Rabkin* of counsel), for defendant and third-party plaintiff respondent-appellant.

**OPINION OF THE COURT**

DILLON, J.P.

These appeals provide an occasion to clarify for the bar issues of timeliness and procedure related to default judgments sought against plaintiffs who fail to reply to defendants' counterclaims.

## I. Relevant Facts

The facts underlying this appeal are tragic. On April 11, 2006, Robert A. Giglio, Sr. (hereinafter Robert Sr.), his 19-year-old son, Robert A. Giglio, Jr. (hereinafter Robert Jr.), and Robert Sr.'s brother, Shawn P. Giglio (hereinafter Shawn), consumed alcoholic beverages at a pub owned by the defendant, NTIMP, Inc., doing business as Napper Tandy's Pub (hereinafter Napper Tandy), on County Road 83 in the Town of Brookhaven. Shawn thereafter drove from the pub in a vehicle owned by the

defendant Kathleen P. D'Agostino, in which Robert Jr. was a passenger. The vehicle crashed into a tree and, as a result, Shawn and Robert Jr. were killed. The Chief Medical Examiner of the County of Suffolk determined that Shawn and Robert Jr.'s brain alcohol levels were .12% and .08%, respectively. On January 29, 2007, the plaintiff Susanne Giglio (hereinafter Susanne), Robert Jr.'s mother, was appointed as administrator of Robert Jr.'s estate.

Susanne, suing individually and in her capacity as administrator of the estate of Robert Jr., commenced this action together with Robert Sr. to recover damages against Napper Tandy and D'Agostino. The plaintiffs asserted causes of action against Napper Tandy alleging, inter alia, violations of General Obligations Law § 11-100 for the unlawful sale of alcoholic beverages to Robert Jr., who was a minor, and General Obligations Law § 11-101 for the unlawful sale of alcoholic beverages to Shawn at a time when Shawn was visibly intoxicated. The plaintiffs asserted a cause of action against D'Agostino, among other things, in her capacity as the owner of the motor vehicle operated by Shawn with her alleged knowledge and consent.

Napper Tandy interposed an answer dated May 2, 2007, denying the material allegations of the complaint, asserting 20 affirmative defenses, and interposing a cross claim against D'Agostino and a counterclaim against the plaintiff Robert Sr. Specifically, the counterclaim alleged that any injuries sustained by Robert Jr. were caused in whole or in part by the negligent acts of Robert Sr., which presumably allude to Robert Sr.'s acquiescence to the consumption of alcohol by Shawn and Robert Jr., and to Shawn's subsequent operation of D'Agostino's automobile. An affidavit of service evidences service of Napper Tandy's answer upon the plaintiffs' counsel on May 2, 2007, via regular mail.

Approximately 11 months later, D'Agostino and Shawn's estate settled with the plaintiffs for the combined sum of $50,000. In furtherance of that partial settlement, the settling parties executed a notarized general release, releasing D'Agostino and Shawn's estate, and their heirs, executors, administrators, successors, and assigns, from "all actions, causes of action, suits, debts, dues, sums of money . . . damages, judgments, extants, executions, claims, and demands whatsoever." The release cited the sum of $50,000 as the consideration received and acknowledged by the plaintiffs, and there is no dispute that this $50,000 was, in fact, paid. In a decree dated

August 20, 2008, the Surrogate's Court, Suffolk County, approved the settlement on behalf of Robert Jr.'s estate. Payment of the $50,000 settlement was then made by D'Agostino's insurer, Progressive Insurance Company, via three checks issued on or about August 27, 2008, payable to Robert Sr., to the plaintiffs' counsel, and to a funeral home, respectively.

Thereafter, Napper Tandy impleaded Dawn McNeil, as administrator of the estate of Shawn P. Giglio, by the filing and service of a third-party summons and complaint dated April 30, 2009. Issue was joined in the third-party action by service of an answer, which pleaded, as an affirmative defense, inter alia, the release provisions of General Obligations Law § 15-108.

Independent of the partial settlement and the third-party action, Napper Tandy moved, among other things, for a default judgment on its counterclaim against Robert Sr., based upon his failure to serve a reply to the counterclaim that had been asserted against him. The notice of motion was dated June 5, 2008, approximately 13 months after the service, on May 2, 2007, of the answer containing the counterclaim.

By notice dated June 23, 2008, the plaintiffs cross-moved to dismiss the counterclaim asserted against Robert Sr. or, alternatively, for leave to serve a late reply. The plaintiffs argued that more than one year had elapsed from the date upon which a reply to the counterclaim had become due and that, accordingly, the counterclaim should be dismissed as abandoned pursuant to CPLR 3215 (c).

Napper Tandy opposed that branch of the cross motion which was to dismiss its counterclaim, arguing that it had timely moved for a default judgment against Robert Sr. by serving its notice of motion and supporting papers within one year of his default. Napper Tandy contended that Robert Sr.'s default did not occur until the lapse of more than 35 days after it had served the answer containing the counterclaim upon Robert Sr.'s attorney. Specifically, Napper Tandy argued that, by virtue of CPLR 303, Robert Sr.'s time for service of a reply to the counterclaim was 30 days rather than 20 days, because Robert Sr. had designated his attorney as his agent for service, and that when that 30-day period of time was added to the five-day extension provided by CPLR 2103 (b) (2) to account for the service by mail of the answer containing the counterclaim, Robert Sr. had a total of 35 days to reply to the counterclaim. By Napper Tandy's calculation, the additional 10 days afforded by CPLR 303 for the service of the reply meant that Robert Sr. was not in

default unless he failed to serve a reply within 35 days after May 2, 2007, i.e., by June 6, 2007, that Robert Sr. was in default as of June 7, 2007, and that its motion for a default judgment against Robert Sr.—served on June 5, 2008, or less than one year after the default—was timely.

By separate notice of motion dated September 1, 2009, McNeil, as the administrator of Shawn's estate, moved pursuant to CPLR 3211 (a) (5) to dismiss the third-party complaint on the ground that Shawn's estate was released from any and all liability by operation of the $50,000 settlement, the general release that was executed in furtherance of the settlement, and General Obligations Law § 15-108. Napper Tandy opposed the separate motion, arguing that the Surrogate's Court's decree dated August 20, 2008 was limited to the release of D'Agostino, and that the $50,000 payment was made by D'Agostino's insurer solely on her behalf. Accordingly, Napper Tandy maintained that the written release did not bar its cause of action for contribution from Shawn's estate, and that, in any event, the Surrogate's Court never approved any settlement as to Shawn's estate.

The motions and cross motion were resolved by the Supreme Court in an order dated November 30, 2009 (2009 NY Slip Op 32855[U] [2009]). In that order, the Supreme Court, inter alia, granted that branch of the plaintiffs' cross motion which was pursuant to CPLR 3215 (c) to dismiss Napper Tandy's counterclaim as abandoned, concluding that its motion for a default judgment against Robert Sr. was not made within one year of his default, as mandated by the statute. Additionally, the Supreme Court denied McNeil's motion pursuant to CPLR 3211 (a) (5) to dismiss the third-party complaint, determining that, under the circumstances of the case, General Obligations Law § 15-108 did not preclude Napper Tandy's third-party cause of action for contribution.

McNeil appeals from so much of the order as denied her motion pursuant to CPLR 3211 (a) (5) to dismiss the third-party complaint on the ground of release, and Napper Tandy separately appeals from so much of the same order as granted that branch of the plaintiffs' cross motion which was to dismiss its counterclaim against Robert Sr.

## II. Dismisssal of the Counterclaim as Abandoned

■ The Supreme Court properly granted that branch of the plaintiffs' cross motion which was pursuant to CPLR 3215 (c) to

dismiss Napper Tandy's counterclaim against Robert Sr. CPLR 3215 (c) provides that

> "[i]f the plaintiff fails to take proceedings for the entry of judgment within one year after the default, the court shall not enter judgment but shall dismiss the complaint as abandoned, without costs, upon its own initiative or on motion, unless sufficient cause is shown why the complaint should not be dismissed."

While counterclaims are not specifically mentioned anywhere in CPLR 3215, the statute's legislative history reveals that it was intended to apply to claims asserted as counterclaims, cross claims, and third-party claims, in addition to those set forth in complaints (*see* Final Report of Advisory Comm on Practice and Procedure at A-476 [advance draft 1961]; Weinstein-Korn-Miller, NY Civ Prac ¶ 3215.08). CPLR 3215 (c) has, in fact, been applied to parties asserting unanswered counterclaims (*see Clemente v Clemente*, 50 AD3d 514 [2008]; *Iovine v Caldwell*, 256 AD2d 974, 977 [1998]; *Mint Factors v Goldman*, 74 AD2d 599 [1980]). The policy behind CPLR 3215 (c) is to prevent parties who have asserted claims from unreasonably delaying the termination of actions, and to avoid inquests on stale claims (*see Stocker v City of New York*, 72 Misc 2d 63, 64 [1972]; *Employers Liab. Assur. Corp. v Zolfo Merchandising*, 62 Misc 2d 872 [1970]).

Here, Napper Tandy's motion for a default judgment on the counterclaim was untimely. CPLR 3012 (a) requires that service of an answer or reply shall be made within 20 days after service of the pleading to which it responds. The affidavit of service for Napper Tandy's answer, containing the counterclaim against Robert Sr., evidences its service by regular mail on May 2, 2007. A reply to the counterclaim was, therefore, due 25 days later by virtue of the five-day extension that is applicable since the reply would have been responsive to a pleading served by mail; thus, the reply was required to be served no later than May 27, 2007 (*see* CPLR 2103 [b] [2]; *Carp v Marcus*, 105 AD2d 584, 585 [1984]), after which Robert Sr. was in default. Since Robert Sr. did not serve a reply by that date, he was in default as of May 28, 2007. Napper Tandy admittedly did not serve its motion for a default judgment until June 5, 2008, more than one year after the date of default.

The language of CPLR 3215 (c) is not, in the first instance, discretionary, but mandatory, inasmuch as courts "shall"

dismiss claims (CPLR 3215 [c]) for which default judgments are not sought within the requisite one-year period, as those claims are then deemed abandoned (*see Butindaro v Grinberg*, 57 AD3d 932 [2008]; *DuBois v Roslyn Natl. Mtge. Corp.*, 52 AD3d 564, 565 [2008]; *County of Nassau v Chmela*, 45 AD3d 722 [2007]; *Kay Waterproofing Corp. v Ray Realty Fulton, Inc.*, 23 AD3d 624 [2005]). The one exception to the otherwise mandatory language of CPLR 3215 (c) is that the failure to timely seek a default on an unanswered complaint or counterclaim may be excused if "sufficient cause is shown why the complaint should not be dismissed" (CPLR 3215 [c]). This Court has interpreted this language as requiring both a reasonable excuse for the delay in timely moving for a default judgment, plus a demonstration that the cause of action is potentially meritorious (*see Ryant v Bullock*, 77 AD3d 811 [2010]; *Solano v Castro*, 72 AD3d 932, 932-933 [2010]; *115-41 St. Albans Holding Corp. v Estate of Harrison*, 71 AD3d 653 [2010]; *Sicurella v 111 Chelsea, LLC*, 67 AD3d 996 [2009]; *DuBois v Roslyn Natl. Mtge. Corp.*, 52 AD3d at 565; *County of Nassau v Chmela*, 45 AD3d at 722; *Durr v New York Community Hosp.*, 43 AD3d 388 [2007]; *Costello v Reilly*, 36 AD3d 581 [2007]; *Kay Waterproofing Corp. v Ray Realty Fulton, Inc.*, 23 AD3d at 625; *London v Iceland Inc.*, 306 AD2d 517 [2003]). The determination of whether an excuse is reasonable in any given instance is committed to the sound discretion of the motion court (*see Staples v Jeff Hunt Devs., Inc.*, 56 AD3d 459, 460 [2008]; *Costello v Reilly*, 36 AD3d at 581; *Ewart v Maimonides Med. Ctr.*, 239 AD2d 543 [1997]).

The papers submitted by Napper Tandy in support of its motion for a default judgment on the counterclaim failed to set forth any argument addressing the issue of whether it had a reasonable excuse for its failure to seek a default judgment against Robert Sr. within the requisite one-year period after his default. Rather, Napper Tandy merely argued that its motion was timely, an argument that is without merit. Where, as here, a party moving for a default judgment beyond one year from the date of default fails to address any reasonable excuse for its untimeliness, courts may not excuse the lateness and "shall" dismiss the claim pursuant to CPLR 3215 (c) (*see County of Nassau v Chmela*, 45 AD3d at 722; *Keyes v McLaughlin*, 49 AD2d 974 [1975]; *Di Carlo v Bravo Tours*, 129 AD2d 552 [1987]; *Perricone v City of New York*, 96 AD2d 531, 532 [1983], *affd* 62 NY2d 661 [1984]; *Shepard v St. Agnes Hosp.*, 86 AD2d 628, 630 [1982]).

Napper Tandy argues that its motion for a default judgment was timely, since CPLR 320 (a) and 303, when read together, gave the plaintiffs 30 days to answer the counterclaim, rather than 20. By Napper Tandy's reckoning, application of a 30-day period from the service of the answer with counterclaim, plus a five-day extension to account for the service of the answer with counterclaim by mail (*see* CPLR 2103 [b] [2]), established the last date for timely service of a reply as June 6, 2007, the date of default as June 7, 2007, and the motion deadline as Saturday, June 7, 2008 (*see* General Construction Law §§ 20, 57; *see generally Marino v Proch*, 258 AD2d 628, 628 [1999]), which was automatically further extended by operation of law to the following Monday, June 9, 2008 (*see* General Construction Law § 25-a [1]). By this calculation, the motion for a default judgment, made on June 5, 2008, would have been timely if the 30-day period of CPLR 303 and 320 (a) were applicable.

■ We nonetheless reject Napper Tandy's timeliness argument, as the 30-day time frame articulated in CPLR 303 does not apply to this action. CPLR 320 (a) provides, in pertinent part, that

"[a]n appearance shall be made within twenty days after service of the summons, except that if the summons was served on the defendant by delivering it to an official of the state authorized to receive service in his behalf or if it was served pursuant to section 303 . . . the appearance shall be made within thirty days after service is complete."

However, CPLR 303 provides that

"[t]he commencement of an action in the state *by a person not subject to personal jurisdiction* is a designation by him of his attorney appearing in the action . . . as agent, during the pendency of the action, for service of a summons pursuant to [CPLR] 308, in any separate action in which such a person is a defendant and another party to the action is a plaintiff if such separate action would have been permitted as a counterclaim had the action been brought in the supreme court" (emphasis added).

This statute applies only to nondomiciliary plaintiffs (*see* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 303, at 6), and there is no evidence in the record that Robert Sr. is a nondomiciliary plaintiff. To the contrary,

at his deposition, Robert Sr. testified that he resided in Farmingdale, New York. As a result, Robert Sr.'s attorney was not an agent designated for receipt of service of process within the scope of CPLR 303, and Robert Sr. was, therefore, not entitled to an underlying period of 30 days for the service of a reply to Napper Tandy's counterclaim under CPLR 320 (a).

Napper Tandy's contention on its appeal, that any violation of the one-year deadline of CPLR 3215 (c) was due to excusable law office failure is unavailing. A "bald and unsubstantiated claim of law office failure" is insufficient to explain a delay in meeting the one-year deadline of CPLR 3215 (c) (*Staples v Jeff Hunt Devs., Inc.*, 56 AD3d at 460; *see Opia v Chukwu*, 278 AD2d 394 [2000]). In any event, the issue of law office failure is not properly before the Court, as Napper Tandy did not advance any arguments about law office failure before the Supreme Court (*see Rotundo v S & C Magnetic Resonance Imaging*, 255 AD2d 573, 574 [1998]; *Ciesinski v Town of Aurora*, 202 AD2d 984 [1994]).

We note that the pitfall of CPLR 3215 (c)—that parties prosecuting a cause of action in a complaint or a counterclaim must seek entry of a default judgment within one year from the date of default—does not necessarily befall parties that prosecute cross claims. CPLR 3011 provides that "[t]here shall be . . . an answer to a cross-claim that contains a demand for an answer [and that] [i]f no demand is made, the cross-claim shall be deemed denied or avoided" (CPLR 3011; *see Green Point Sav. Bank v Pagano*, 103 AD2d 735 [1984]). The denial that is "deemed" by law to have been made occurs at the time that an answer to the cross claim would otherwise be due. In instances where an answer is not demanded in response to a cross claim, the denial that is "deemed" to have been made under CPLR 3011 will foreclose any motion for a default judgment on the cross claim and, by extension, foreclose dismissal of such a cross claim even where no default motion is made within one year as required by CPLR 3215 (c). This is peculiarly distinct from counterclaims, which are not "deemed" denied in the absence of a reply, regardless of whether a reply is specifically demanded by the party asserting a counterclaim (*see* CPLR 3011). If, however, cross claims are asserted demanding an answer, they must be dealt with in the same manner as a counterclaim by both the responding party and the party that might later obtain the right to seek a default judgment under CPLR 3215 (c).

### III. The Release of the Third-Party Defendant by Partial Settlement Under General Obligations Law § 15-108

■ The Supreme Court should have granted the third-party defendant's motion pursuant to CPLR 3211 (a) (5) to dismiss the third-party complaint on the ground of release.

Release is an expressed basis for the dismissal of a cause of action under CPLR 3211 (a) (5). General Obligations Law § 15-108 provides, inter alia, that a release given by the injured party to one of several tortfeasors relieves the settling tortfeasor "from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules" (General Obligations Law § 15-108 [b]; *see Cover v Cohen*, 113 AD2d 502, 510 [1985]). Effective July 4, 2007, General Obligations Law § 15-108 was amended to add subdivision (d) (*see* L 2007, ch 70, § 1), which provides that releases and covenants not to sue fall within the scope of the statute only if:

> "(1) the plaintiff or claimant receives, as part of the agreement, monetary consideration greater than one dollar;
>
> "(2) the release or covenant completely or substantially terminates the dispute between the plaintiff or claimant and the person who was claimed to be liable; and
>
> "(3) such release or covenant is provided prior to entry of judgment" (General Obligation Law § 15-108 [d]).

The release at issue here was executed by the signatory parties on March 31, 2008, and April 3, 2008, after the effective date of the amended statute.

Here, the language of the release is neither vague nor ambiguous (*see Lipiner v Santoli*, 60 AD3d 1001, 1002 [2009]; *Barry v Hildreth*, 9 AD3d 341, 342 [2004]), and it provides that the plaintiffs release Shawn's estate from, among other things, "all actions, causes of action [and] suits" in exchange for consideration of $50,000, "receipt whereof is hereby acknowledged." It is undisputed that the plaintiffs received monetary consideration of greater than one dollar as part of the agreement (*see* General Obligations Law § 15-108 [d] [1]), and that the release was delivered prior to the entry of judgment. Accordingly, Shawn's estate has no potential liability for contribution to Napper Tandy (*see* General Obligations Law § 15-108 [b]; *Kelly v New York Tel. Co.*, 100 AD2d 537 [1984]). Napper Tandy's conten-

tion, in essence, that the failure of Shawn's estate to specifically contribute to the $50,000 of consideration paid by D'Agostino's insurer takes the release outside the scope of General Obligations Law § 15-108 (a), is unavailing. Here, the plain language of the release cites that consideration in the sum of $50,000 was exchanged for the release of both D'Agostino and Shawn's estate, and it is undisputed that the payment was, in fact, made. Napper Tandy's argument strains practicality, as it would require courts to examine not only release documents to determine whether they satisfy General Obligations Law § 15-108 (d), but also to examine the details of the payments made pursuant to the terms of a release, even where it is undisputed that the consideration has been paid and the release acknowledges receipt of the consideration by the releasor.

Moreover, although the third-party complaint also asserts a cause of action for common-law indemnification, under the circumstances of this case, that cause of action is, in actuality, a cause of action for contribution (*see Glaser v Fortunoff of Westbury Corp.*, 71 NY2d 643, 644-645 [1988]; *Hoogland v Transport Expressway, Inc.*, 72 AD3d 1026, 1027 [2010]; *Rudden v Bernstein*, 2008 NY Slip Op 30068[U], *15 [Sup Ct, Suffolk County 2008], *mod on other grounds* 61 AD3d 736 [2009]; *see generally Barry v Hildreth*, 9 AD3d 341, 342 [2004]; *cf. Zona v Oatka Rest. & Lounge*, 68 NY2d 824, 825 [1986]; *Coughlin v Barker Ave. Assoc.*, 202 AD2d 622, 623-624 [1994]) and, thus, is barred (*see* General Obligations Law § 15-108 [b]; *Boeke v Our Lady of Pompei School*, 73 AD3d 825, 826-827 [2010]). Therefore, McNeil was entitled to dismissal of the third-party complaint by operation of the release provisions of CPLR 3211 (a) (5) and General Obligations Law § 15-108.

█ Similarly, Napper Tandy cites no authority to establish that the Surrogate's Court's decree, reciting that consideration had been paid to settle the plaintiffs' claims against D'Agostino, has the effect of removing the release from the scope of General Obligations Law § 15-108 with regard to Shawn's estate. The purpose of the Surrogate's Court's decree was to permit discontinuance of this action insofar as asserted against D'Agostino. It was not necessary to seek similar authorization with regard to Shawn's estate, as neither Shawn's estate nor McNeil, as the administrator of that estate, was named as a defendant in any action commenced by the plaintiffs.

The remaining contentions of Napper Tandy and McNeil either are without merit or have been rendered academic by our determination.

Accordingly, the order is reversed insofar as appealed from by the third-party defendant, on the law, the third-party defendant's motion pursuant to CPLR 3211 (a) (5) to dismiss the third-party complaint on the ground of release is granted, and the order is affirmed insofar as appealed from by the defendant and third-party plaintiff.

BALKIN, LEVENTHAL and CHAMBERS, JJ., concur.

Ordered that the order is reversed insofar as appealed from by the third-party defendant, on the law, and the third-party defendant's motion pursuant to CPLR 3211 (a) (5) to dismiss the third-party complaint on the ground of release is granted; and it is further,

Ordered that the order is affirmed insofar as appealed from by the defendant and third-party plaintiff; and it is further,

Ordered that one bill of costs is awarded to the third-party defendant, payable by the defendant third-party plaintiff.