■ JAMES D. VAN HOESEN, Appellant, v ERIC DOLEN et al., Respondents, et al., Defendants. (Action No. 1.) ROBERT RASI, Appellant v ERIC DOLEN et al., Respondents, et al., Defendants. (Action No 2.) [942 NYS2d 650]—

Garry, J. Appeal from an order of the Supreme Court (Devine, J.), entered April 13, 2011 in Schoharie County, which, among other things, granted cross motions by defendants Superior Housing, LLC, Eric Dolen and Karen Dolen for summary judgment dismissing the complaint against them.

Defendant Eric Dolen (hereinafter Dolen) is a principal of defendant Superior Homes, LLC, a supplier of modular and mobile homes. He and defendant Karen Dolen own and reside in a single-family home located in the Town of Carlisle, Schoharie County. In 2008, they decided to construct an indoor horseback riding arena on their property. Dolen purchased lumber and materials, had the site graded and prepared, arranged for the use of a crane, and entered into an oral agreement with Christopher Clarke, the owner of defendant Interstate Home Improvements, LLC (hereinafter Interstate) by which Interstate would erect the arena's frame and roof. Plaintiffs were employed

by Interstate as laborers and were in the process of installing roof trusses when the trusses collapsed, causing them to fall approximately 20 feet to the ground.

Plaintiffs commenced these actions alleging common-law negligence and Labor Law violations. After discovery, plaintiffs each moved for partial summary judgment as to liability, and plaintiff James D. Van Hoesen moved for a default judgment against Interstate and defendant Interstate Construction. Thereafter, the Dolens and Superior separately cross-moved for summary judgment dismissing the complaint. Supreme Court denied plaintiffs' motions, granted the cross motions for summary judgment dismissing the claims against Superior and the Dolens, and dismissed the complaint against Interstate and Interstate Construction. Plaintiffs appeal.

To hold the Dolens liable on their common-law negligence and Labor Law § 200 claims, plaintiffs were required to demonstrate that the Dolens " 'both exercised supervisory control over the operation and had actual or constructive knowledge of the unsafe manner in which the work was being performed' " (*Rought v Price Chopper Operating Co., Inc.*, 73 AD3d 1414, 1416 [2010], quoting *Lyon v Kuhn*, 279 AD2d 760, 761 [2001]). They made no such showing. Dolen testified that although he was generally aware that the arena was to be a pole barn with roof trusses, he was not familiar with the construction details. He testified that he provided no instructions to Clarke other than the arena's intended size and orientation, and that his only involvement with Interstate's work was to visit the site "[s]poradically" to check on its progress. Dolen stated that, on the day of the accident, he arrived after about half of the trusses had been installed and was speaking with the crane operator when the trusses suddenly collapsed. The crane operator confirmed that this conversation consisted of "small talk" unrelated to the project and that Dolen never gave him any instructions. Likewise, Clarke testified that neither of the Dolens provided him with directions as to how the construction was to be carried out; he stated that he was "the boss" of the erection of the arena, supervised and directed plaintiffs' work, and used instructions provided by the manufacturer in installing the trusses. Finally, both plaintiffs testified that they were supervised by Clarke and never discussed their work with the Dolens or heard them express any dissatisfaction with its progress. Plaintiffs also testified that they believed that Clarke was under pressure to complete the truss installation quickly, but Clarke did not confirm this claim, and neither plaintiff could specify whether the alleged time pressure was being exerted by

the Dolens or someone else. Thus, their testimony was insufficient to create issues of fact as to the Dolens' control of the work, and Supreme Court properly dismissed the common-law negligence and Labor Law § 200 claims against them (see Rought v Price Chopper Operating Co., Inc., 73 AD3d at 1416; Chapman v Town of Copake, 67 AD3d 1174, 1176 [2009]; Snyder v Gnall, 57 AD3d 1289, 1291 [2008]; compare McDonald v UICC Holding, LLC, 79 AD3d 1220, 1221-1222 [2010], lv denied 17 NY3d 769 [2011]).

For similar reasons, the claims against the Dolens pursuant to Labor Law § 240 (1) and § 241 (6) were properly dismissed. Owners of one- or two-family dwellings who do not direct or control the work being performed are exempt from liability under these statutes (see Chapman v Town of Copake, 67 AD3d at 1175). " '[T]he phrase "direct or control" . . . is construed strictly and refers to the situation where the owner supervises the method and manner of the work' " (id., quoting Pascarell v Klubenspies, 56 AD3d 742, 742 [2008]). As previously discussed, there is no evidence that the Dolens exerted supervisory control over the method and manner of the arena's construction. In the absence of such evidence, Dolen did not lose the protection of the exemption by hiring contractors, arranging for the use of equipment, or purchasing materials (see Chapman v Town of Copake, 67 AD3d at 1175-1176; Snyder v Gnall, 57 AD3d at 1290-1291; Ferrero v Best Modular Homes, Inc., 33 AD3d 847, 849-850 [2006], lv dismissed 8 NY3d 841 [2007]; Lane v Karian, 210 AD2d 549, 549-550 [1994]).

We further reject plaintiffs' argument that the homeowners' exemption was inapplicable because the arena was not appurtenant to the Dolens' home or intended for storage of personal items. Application of the exemption does not require that these matters be shown, but is instead based "on the site and purpose of the work" (Allen v Fiori, 277 AD2d 674, 674 [2000]; see Bartoo v Buell, 87 NY2d 362, 368 [1996]) and on whether the owner intends to use the structure "only for commercial purposes" (Truppi v Busciglio, 74 AD3d 1624, 1625 [2010]). The arena was located on the same property as the Dolens' single-family home, and both Dolens testified, without contradiction, that it was built solely for the personal use of their family members. In the absence of any related commercial purpose, we find no significance in Dolen's use of Superior's resources for some aspects of the construction nor his payment for some of the materials with his business check. Accordingly, the Dolens are exempt from strict liability under the Labor Law for plaintiffs' injuries (see Bartoo v Buell, 87 NY2d at 369; Crown-

*ingshield v Kim*, 19 AD3d 975, 976-977 [2005], *lv denied* 5 NY3d 711 [2005]; *George v Hunt*, 289 AD2d 935 [2001]; *compare Battease v Harrington*, 90 AD3d 1124, 1125-1126 [2011]).

Next, we find that the claims against Superior were properly dismissed despite its involvement in some aspects of the construction. Dolen arranged to have the site graded by a Superior employee using a bulldozer owned by Superior; this employee then covered the site with a base layer of limestone dust purchased by Dolen. When the site preparation was complete, Clarke testified that "one of [Dolen's] men" dug holes and helped Clarke set poles for the arena's frame; however, Clarke did not know whether this unidentified worker was employed by Superior or by Dolen personally, and there was no evidence that the worker exerted supervision or control over any aspect of the arena's construction. Finally, the crane's owner testified that he provided the crane to the Dolens for use in constructing the arena free of charge, as a gesture of appreciation for Superior's frequent business use of the crane. However, he testified that he did not visit the Dolens' property while the crane was in use and had no involvement in constructing the arena. In addition, the crane operator testified that he did not receive instructions from the Dolens or any Superior representative, but from the crane owner. Thus, there was no evidence that Superior "exercised some supervisory control over the performance of [plaintiffs'] work," and the Labor Law § 200 and negligence claims against it were properly dismissed (*Norman v Welliver McGuire, Inc.*, 48 AD3d 945, 946 [2008]; *see Biance v Columbia Washington Ventures, LLC*, 12 AD3d 926, 927 [2004]; *Cook v Thompkins*, 305 AD2d 847, 847-848 [2003]). Further, Superior was not liable under Labor Law §§ 240 and 241 as a general contractor or the Dolens' agent, as there was no evidence that it was "granted the power to enforce safety standards and hire subcontractors . . . [or that it had] authority to supervise and control the activity which brought about the injury" (*Bowles v Clean Harbors Envtl. Servs., Inc.*, 72 AD3d 1307, 1308-1309 [2010] [citations omitted]; *see Walls v Turner Constr. Co.*, 4 NY3d 861, 864 [2005]; *Morris v C & F Bldrs., Inc.*, 87 AD3d 792, 793 [2011]; *compare Futo v Brescia Bldg. Co.*, 302 AD2d 813, 814-815 [2003]).

Finally, we reject plaintiffs' contention that their motion for a default judgment should have been granted. Supreme Court denied this motion and dismissed the complaint against Interstate and Interstate Construction on the ground that the record conclusively established that these claims were barred by workers' compensation exclusivity (*see* Workers' Compensation Law

§ 11; *Clemens v Brown*, 69 AD3d 1197, 1198-1199 [2010]). Although these defendants neither appeared in the action nor moved for this relief, we find that the claims were properly dismissed. Where, as here, the party seeking a default judgment fails to move for such relief within a year of the default or to show sufficient cause for the delay, the court "shall dismiss the complaint as abandoned" and may do so on its own motion (CPLR 3215 [c]; *see Giglio v NTIMP, Inc.*, 86 AD3d 301, 307-308 [2011]; *DuBois v Roslyn Natl. Mtge. Corp.*, 52 AD3d 564, 565 [2008]; *Fallsburgh Lbr. Co. v De Graw*, 239 AD2d 846, 846 [1997]; *compare Estate of Spiegel v Estate of Rickey*, 29 AD3d 1180, 1180-1181 [2006]).

Peters, P.J., Rose, Kavanagh and Egan Jr., JJ., concur. Ordered that the order is affirmed, with one bill of costs.